RULING ON MOTION FOR SUMMARY JUDGMENT
 

 EGINTON, Senior District Judge.
 

 Plaintiffs Helene Pollack, individually, and Helene Pollack and Alan Pollack, Co-Executors of the Estate of Foster Pock, brought this action under the Connecticut Product Liability Act, Conn.Gen.Stat. §§ 52-572m to 52-572q against defendant, Bridgestone/Firestone, Inc. Plaintiffs allege that defendant’s negligent design and manufacture of a Fire
 
 *152
 
 stone Steeltex radial tire caused the death of plaintiffs’ decedent, Foster Pollack, and caused plaintiff Helene Pollack to sustain personal injuries.
 

 Defendant moves for summary judgment on plaintiffs’ Substituted Amended Complaint. For the following reasons, the motion will be denied.
 

 BACKGROUND
 

 The relevant facts are undisputed. Defendant is a corporation incorporated in Ohio with its headquarters located in Ohio. Plaintiff Helene Pollack is a domiciliary of Connecticut. On August 29, 1990, plaintiff Helene Pollack and her husband, Foster Pollack, were driving on Interstate 70 in Union Township, Ohio, when the rear tire of their Ford Eeonoline van blew out causing the van to overturn killing Foster Pollack and injuring plaintiff. The tire was manufactured in Illinois and purchased by Foster Pollack in Kansas on September 9, 1988, from a Firestone store which also installed the tire.
 

 The van at issue was used by the Pollacks to transport items from their collectibles business across the United States for sale at various fairs. At the time of the accident, the Pollacks were on a sales trip which originated in Connecticut where the van was packed for travel.
 

 Plaintiffs Helene Pollack and Alan Pollack were appointed as Co-Executors of the Estate of Foster Pollack on September 28,1990, by the Probate Court, District of Ridgefield, Connecticut, and subsequently brought this action. Defendant claims,
 
 inter alia,
 
 that the tire failure was caused by plaintiffs’ misuse and/or alteration of the tire.
 

 Defendant has moved for summary judgment asserting that 1) plaintiffs’ complaint is fatally flawed because it pleads relief under Connecticut law, not Ohio law, the correct law to be applied; and 2) plaintiffs have not presented a viable legal theory of causation because the opinions of their experts, Dennis Carlson and Lawrence Sperberg, are inadequate and contradict one another.
 

 DISCUSSION
 

 A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.
 
 American International Group, Inc. v. London American International Corp.,
 
 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986). “Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper.”
 
 Bryant v. Maffucci,
 
 923 F.2d 979, 982 (2d Cir.),
 
 cert. denied,
 
 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).
 

 a)
 
 Conflicts of Law
 

 When jurisdiction is based on diversity of citizenship, the forum state’s choice of law rules apply.
 
 Klaxon v. Stentor Electric Manufacturing Co.,
 
 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Connecticut has traditionally applied the doctrine of
 
 lex loci delicti,
 
 the place where the injury occurred. In
 
 O'Connor v. O’Connor,
 
 201 Conn. 632, 648, 519 A.2d 13 (1986), the Connecticut Supreme Court abandoned “categorical allegiance” to the application of the
 
 lex loci delicti
 
 doctrine in tort actions. The court noted that circumstances exist where the “strict application of the
 
 lex loci delicti
 
 rule frustrates the legitimate expectations of the parties and undermines an important policy of the state.”
 
 Id.
 
 at 637, 519 A.2d 13. In those eases, the most significant relationship test espoused in the Restatement (Second) Conflicts of Laws § 145 should be applied.
 
 Id.
 
 at 649-50, 519 A.2d 13. Under this test, the law of the state with the “most significant relationship to the occurrence and the parties ...” governs the rights and liabilities of the parties.
 
 Id.
 
 at 650, 519 A.2d 13
 
 *153
 
 (quoting Restatement (Second) Conflicts of Law § 145(1) (1971)).
 

 To determine which state has the most significant contacts, the court should consider such factors as: a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the residence, place of incorporation and place of business of the parties; and d) the place where the relationship, if any, between the parties is centered.
 
 Id.
 
 at 652, 519 A.2d 13 (quoting Restatement (Second) Conflicts of Law § 145(2) (1971)). The court must also consider the relevant policies and interests of each state involved.
 
 Id.
 
 at 651, 519 A.2d 13. These factors “are to be evaluated according to their relative importance with respect to the particular issue.”
 
 Id.
 
 at 653, 519 A.2d 13 (quoting Restatement (Second) Conflicts of Law § 145(2) (1971)).
 

 Here, factor (a) favors Ohio, the state where the accident occurred. Factor (b), the place of the conduct causing the injury, favors both Illinois, where the tire was manufactured and Kansas, where the tire was installed. Factor (c) points to both Ohio, defendant’s place of incorporation and headquarters, and Connecticut, where plaintiff Helene Pollack domiciles. Factor (d) is inconclusive because there was no “relationship” between the parties other than the purchase and installation of the tire.
 

 Although Ohio has more contacts in number than Connecticut, it is not the number of contacts but their significance which is the focus of inquiry.
 
 Id.
 
 at 652, 519 A.2d 13. The fact that defendant’s place of incorporation and headquarters are located in Ohio is entitled to some weight. However, neither an Ohioan driver nor the Ohio roads are implicated in this case. Connecticut, on the other hand, has a strong policy interest in ensuring that plaintiff Helene Pollack, a Connecticut domiciliary, be permitted to avail herself of the full range of remedies available under Connecticut law.
 
 Id.
 
 at 657, 519 A.2d 13. Plaintiff Helene Pollack was also treated for her injuries in Connecticut. Moreover, given defendant’s affirmative defenses of misuse and alteration of the tire, it is relevant that the van and tire were maintained in Connecticut. Accordingly, the court finds that Connecticut has the most significant relationship to the occurrence and the parties.
 

 Even if the court found that Ohio law applied, plaintiffs’ complaint would not be found fatally defective. Fed.R.Civ.P. 8 requires a short and plain statement of the claim showing that the pleader is entitled to relief. “The fact that a plaintiff may have erred in his choice of legal theoiy will not preclude him from obtaining relief under another legal theory.” 2A James William Moore & Jo Desha Lucas, Moore’s
 
 Federal Practice
 
 § 8.14 (2d ed. 1996). The
 
 court
 
 should determine whether the relief requested “is possible under any set of facts that could be established consistent with the allegations.”
 
 Daniels v. USS Agri-Chemicals,
 
 965 F.2d 376, 381 (7th Cir.1992) (internal quotation marks and citations omitted) (allegations in complaint stated a claim under Indiana law even if plaintiff cited to Illinois law). Thus, dismissal of the complaint would not be appropriate.
 

 b)
 
 Expert reports
 

 Defendant claims that plaintiffs’ expert, Dennis Carlson, provides only a eonclusory opinion of causation. In the alternative, defendant argues that even if Carlson provides support for his opinion, plaintiffs “lose” this theory because plaintiffs’ other expert, Lawrence Sperberg, disagrees with Carlson’s theory. Additionally, defendant claims that Sperberg’s opinion is independently inadequate because he “changed his opinion” regarding the defect in the tire and he could not state a cause for the defect.
 

 Contrary to defendant’s first, claim, Carlson’s report sets forth the factual basis for his conclusion. The report states in pertinent part:
 

 Radial cuts were made in the tire____ [This] ... analysis revealed that the tum-up for the outer carcass ply terminated exactly in the failure zone on the serial number side. This tum-up was approximately 4 mm higher than the tum-up for the same ply on the side opposite the serial number____ The turn-up end, which was at the point at which the rim contacted the bead area, would have produced a higher
 
 *154
 
 stress in this area. It is felt that this probably contributed to an earlier failure.
 

 This opinion is sufficient to create a genuine issue of material fact regarding a defect in the turn-up ply of the tire.
 

 Defendant’s remaining arguments are similarly without merit. Carlson’s and Sperberg’s differences over the defect and Sperberg’s “change of opinion” will go to credibility and the weight of the evidence.
 
 See Nicholson v. United Technologies Corp.,
 
 697 F.Supp. 598, 601 (D.Conn.1988) (portions of expert’s deposition that may discredit his opinion go to expert’s credibility). Finally, Sperberg opined that he believed a manufacturing defect caused the tire failure and gave several scenarios in support of his opinion. Since issues of material fact exist regarding the defect and its cause, summary judgment is inappropriate.
 

 CONCLUSION
 

 For the foregoing reasons, defendant’s motion for summary judgment [# 63] is DENIED.